# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| SERENA MERRILL, as the Surviving spouse of ROBERT WOLFE and as Personal Representative of the ESTATE OF ROBERT WOLFE,<br><br>    Plaintiff,<br><br>    v.<br><br>JODEE MOSHER, M.D., Individually, and the UNITED STATES OF AMERICA<br><br>    Defendants | CIVIL ACTION<br>CASE NO. |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, by and through counsel, and complains against Defendants as follows:

## PARTIES

1. The Plaintiff, Serena Merrill, is an adult who resides in Portland, Maine, and was married to Robert Wolfe. Serena Merrill is the Personal Representative of the Estate of Robert Wolfe.

2. The Defendant, Jodee Mosher, M.D., is a medical doctor who is licensed to practice in the State of Maine, and whose current contact address is 141 W. Commercial Street, Portland, Maine, 04102. Upon information and belief, at all relevant times to this action, Dr. Jodee Mosher was an employee of the U.S. Department of Veterans Affairs ("VA") and was acting within the scope of her employment.

3. Defendant The United States of America, through operation of the VA, employed Defendant Dr. Mosher.

4. Robert Wolfe was a disabled Army veteran who relocated from Pennsylvania to Maine in the first quarter of 2020.

## JURISDICTION & VENUE

5. This Court has jurisdiction over the Defendant pursuant to 28 U.S.C. § 1346(b).

6. Venue is proper pursuant to 28 U.S.C. § 1391(e).

## TIMELINESS AND THE FEDERAL TORT CLAIMS ACT ('FTCA')

7. The FTCA controls claims against employees of the VA, such as Dr. Mosher. *See* 28 U.S.C. Sec. 1346 and 28 U.S.C. Secs. 2671-2680.

8. In compliance with the FTCA Plaintiff presented her claim administratively to the VA on October 26, 2022.

9. The VA acknowledged receipt of the timely claim. However, as of the time of filing, Plaintiff has received no substantive response to her claim.

10. Accordingly, as six months have passed without a response to the merits of the claim, constructive exhaustion has occurred, a final determination reached, and this suit may proceed. 28 U.S.C. Sec. 2675(a).

## STATEMENT OF THE FACTS

11. Plaintiff reasserts and realleges all previous paragraphs as though fully set forth herein.

12. Robert Wolfe was a disabled Army veteran who had been declared permanently disabled as a result of a service-related back injury.

13. For a long period of time, Mr. Wolfe had been prescribed Oxycodone for back pain.

14. Upon relocation to Maine, Mr. Wolfe sought medical care from the Portland VA Clinic.

15. Mr. Wolfe had his first appointment to get established with his primary care provider, Jodee Mosher, M.D., on October 29, 2020.

16. At that first appointment, Dr. Mosher prescribed a taper plan to wean Mr. Wolfe off the opiates he had been prescribed for years.

17. At that time, he had been prescribed Oxycodone to be taken 20 mg (2 x 10 mg tablets) every 4 hours, totaling 120 mg per day.

18. Dr. Mosher's taper plan began with a 25% reduction to 15 mg (3 x 5 mg tablets) to be taken every 4 hours, totaling 90 mg per day. Dr. Mosher discussed that once Mr. Wolfe was established at this new 90 mg per day dosage, they would gradually taper him at no more than 10% per month off of the Oxycodone.

19. In developing her gradual taper plan Dr. Mosher recognized the well-known and very significant risks of adverse side effects which can be experienced by patients while withdrawing from the long-time prescribed use of Oxycodone. These well-known risks, which are chronicled in readily available medical literature documenting the standard of care, include but are not limited to suicide.

20. On November 4, 2020, Mr. Wolfe returned for another office visit with Dr. Mosher. Dr. Mosher reiterated the prescription plan that he continue to take 15 mg (3 x 5 mg tablets) every 4 hours, totaling 90 mg per day for the time being, until they commenced the monthly taper of no more than 10% per month.

21. According to medical records, following the November 4, 2020, visit, Dr. Mosher called in the prescription and then asked Krystyna Jania, R.N., to notify Mr. Wolfe that instead

of taking 3 5mg tablets to equal 15 mg every 4 hours, he would be receiving 30 mg tablets and cutting them in half to achieve the same 15 mg dosage he was to take every 4 hours. The records indicate that R.N. Jania conveyed this information to Mr. Wolfe.

22. Mr. Wolfe received his new prescription from the VA (Rx # 442892) which displayed instructions consistent with the medical instruction he received from Dr. Mosher, "take one-half tablet by mouth six times daily for chronic pain."

23. Unknown to Mr. Wolfe, the prescription he received contained 15 mg tablets rather than 30 mg tablets which was intended and is referenced in his medical record. Thus, when he took his prescription at the prescribed dosage, he was taking 7.5 mg every 4 hours, for a total of 45 mg daily, an immediate 62% reduction.

24. Mr. Wolfe followed Dr. Mosher's advice and took his medication as prescribed. He quickly began to experience severe withdrawal symptoms which accelerated.

25. On November 24, 2020, Mr. Wolfe, through the VA messaging center, messaged Dr. Mosher to inquire about the taper plan for the following month.

26. Trisha Beckwith, a nurse at the Portland VA clinic, responded to Mr. Wolfe's message saying that the message was forwarded to Dr. Mosher and that somebody would reach out to him to discuss the plan. Ms. Beckwith also stated that Dr. Mosher would discuss the taper plan at Mr. Wolfe's December 2, 2020, appointment prior to making any changes.

27. Mr. Wolfe responded that he is constantly nauseous and constantly in pain.

28. On November 25, 2020, Dr. Mosher messaged Mr. Wolfe stating that if symptoms became severe, he should go to urgent care, but that otherwise, she would see him for the December 2, 2020, appointment to "work on these problems."

29. Mr. Wolfe contacted urgent care but could not be helped because he needed to contact his primary care provider for assistance.

30. On November 27, 2020, Mr. Wolfe, while experiencing accelerated opiate withdrawal, succumbed to suicide. Mr. Wolfe was officially pronounced dead on November 30, 2020, at Maine Medical Center.

31. As a direct and proximate consequence of the professional negligence of Dr. Mosher, Mr. Wolfe died.

32. As a result of the wrongful death of Robert Wolfe, Serena Merrill, as surviving spouse and as Personal Representative of the Estate of Mr. Wolfe suffered injuries and damages, including, but not limited to:

    a. Serious and permanent physical injury;

    b. The Conscious pain and suffering of Mr. Wolfe endured prior to his death;

    c. Economic damages in the form of medical expenses, and out-of-pocket expenses;

    d. Economic damages in the form of loss of income, support and lost household services;

    e. Pain and suffering;

    f. Emotional distress and anxiety;

    g. Inconvenience, aggravation, and loss of comfort, support and enjoyment of life.

33. Plaintiff has presented an administrative claim to the U.S. Department of Veterans Affairs and has received a constructive denial of the claim as more than six months has passed without response. 28 U.S.C. § 2675(a).

## COUNT I – PROFESSIONAL NEGLIGENCE

34. Plaintiff reasserts and realleges all previous paragraphs as though fully set forth herein.

35. The Defendant owed Plaintiff a duty of care to render medical evaluation, advice, and treatment in a medically reasonable manner and meet the generally accepted standard of care.

36. As set forth in paragraphs 12 – 31, Defendant breached the duty of care in her evaluation, advice, and treatment of Mr. Wolfe. Specifically, Dr. Mosher was professionally negligent in the following manner, not intended to be an exhaustive list:

    a. By failing to monitor and keep her patient, Mr. Wolfe, safe while he was withdrawing for purposes of medical treatment, thus rendering him incapable of caring for himself.

    b. By making an error in entering the prescription for Mr. Wolfe on November 4, 2020. This error in calculation fell below the recognized standard of care in this area.

    c. By failing to execute an appropriate taper plan for Mr. Wolfe and, having made that error, by subsequently not providing Mr. Wolfe with additional assistance when he contacted her office to notify them of his severe withdrawal symptoms and for further treatment. Had Dr. Mosher done so, she would have seen that Mr. Wolfe's November 4, 2020, prescription contained a gross miscalculation error. Dr. Mosher's failure to engage and respond to Mr. Wolfe's concerns about her care while in the throes of medically tapered opiate withdrawal fell below the recognized standard of care in this area.

37. At all relevant times, Dr. Mosher was acting within the scope of her employment.

38. As a direct and proximate result of Dr. Mosher's professional negligence, Plaintiff sustained serious injuries, damages, and losses as set forth in paragraphs 32, above.

## COUNT II – WRONGFUL DEATH CAUSED BY PROFESSIONAL NEGLIGENCE

39. Plaintiff reasserts and realleges all previous paragraphs as though fully set forth herein.

40. Dr. Mosher's wrongful acts and negligence was a direct and proximate cause of Mr. Wolfe's death.

41. As the personal representative of Robert Wolfe's estate, Plaintiff is entitled to recover damages as set forth in paragraph 32, above.

## COUNT III – SURVIVAL CLAIM FOR CONSCIOUS PAIN AND SUFFERING OF DECEDENT PURSUANT TO 18-A M.R.S.A. Sec. 3-817

42. Plaintiff reasserts and realleges all previous paragraphs as though fully set forth herein.

43. As set forth above Defendants owed Plaintiff a duty of care to render medical evaluation, advice, and treatment in a medically reasonable manner and meet the generally accepted standard of care.

44. Defendant Mosher breached her duty of care as set forth in paragraphs 12 – 36, Defendant breached the duty of care in her evaluation, advice, and treatment of Mr. Wolfe.

45. As a direct and proximate result of Dr. Mosher's breach of the standard of care, Mr. Wolfe was forced unknowingly into a rapid and severe taper off of long-term prescribed opiate use beginning on November 4, 2020.  This severe, unsafe taper caused Mr. Wolfe substantial pain and distress for the remaining 23 days of his life and in fact it became so substantial that he could no longer endure it and he succumbed to suicide.

46. The Plaintiff is entitled to recover compensatory damages for the conscious pain and suffering endured by Robert Wolfe prior to his death as well as medical bills, as recoverable under the common law, and 18-A M.R.S.A. Sec.3-817 and such other and further relief as this Court deems just and equitable, including attorney's fees, costs, exemplary damages and interest.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants on Counts I through III, and award her compensatory damages, and such other further relief as this Court deems just and equitable, including attorneys' fees, costs, exemplary damages, and interest.

Dated this 6th of September 2023, in Portland, Maine.

Respectfully submitted,

/s/ David Weyrens, Esq.

_____
David A. Weyrens, Bar No. 4035
Alisa R. Schlundt, Bar No. 6703
Attorneys for Plaintiff
HALLETT WHIPPLE WEYRENS
6 CITY CENTER, STE. 208
P.O. BOX 7508
PORTLAND, ME 04112
PH: 207-775-4255
dweyrens@hww.law
aschlundt@hww.law